Good morning, Your Honors. May it please the Court, my name is Ruben Aranda, with Mark Sorkin, Linda Imanode, and Victoria Diaz. We're law students from the University of Arizona, supervised by Dr. Willie Jordan-Curtis. We represent the petitioner, Mr. Hasan Aydin. Could you address this language in 8 U.S.C. 1158 H.2, where the prior effect determines that the applicant should provide evidence that corroborates otherwise credible testimony. Such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence. There are a lot of Somalis in America, and I don't know why we couldn't have more evidence about the clan structure and the petitioner's membership in the clan he says he's a member of, and its relationship to the other clans. I don't know why that wouldn't be available in the United States. Your Honor, allow me to defer to Mike for counsel to be addressing the issue of improper requirement of corroboration without a credibility finding. Thank you, Your Honor. I was originally the person who was supposed to argue credibility and the issue of corroboration, and it is our position that the immigration judge incorrectly required corroborating evidence because he didn't even make a credibility finding. I thought 1158, the amendment to H.2, meant that the judge could require corroboration even without an adverse credibility finding. That is true, but it makes a difference whether he makes a credibility finding, whether he finds the evidence incredibly, really incredible, because then the applicant has a difference when he is going through it. If you look at the language in 1182, which you referenced, we on this trial first determined that the applicant should provide evidence that corroborates otherwise credible testimony. Such evidence must be provided unless it is meaningfully obtainable. So then you have two very different paths that could happen from that point forward. If the immigration judge finds the applicant, in this case Mr. Hassan Injun, to be credible, then we only have to provide evidence that is meaningfully obtainable. And in this case, he doesn't have, because he provided three affidavits. But you didn't argue that the evidence wasn't reasonably obtained. I didn't see any argument to the BIA on that point. No, he didn't argue because he felt that he had to provide reasonably obtainable evidence. He provided three affidavits instead with the effort to obtain reasonably obtainable evidence. Why is it hard to obtain evidence? There are a lot of Somalis. Minnesota has a huge Somali community. My gosh, I ran into a substantial Somali community in Nashville, Tennessee. There must be Somalis who could describe the plan structure and who know this fellow's plan. Well, he comes from a very small class, and there are documents that there are hundreds of clans in Somalia, some of which we don't even know about. I mean, if you think about Brazil, for example, there are tribes in the Amazon that nobody has ever heard of. So even though there may be a large Somali population in Minnesota and other parts of the country, we don't know if any of those people know of Mr. Hassan and his tribe specifically. He was able to obtain affidavits from a Somali advocacy organization, and that affidavit affirms that his tribe does exist. Is there a subpoena power in these proceedings? We have a subpoena power. I actually can't answer that question. I was thinking one thing you could do if you didn't have any fellow clansmen. Is subpoena somebody from a clan that hates your clan and put them on to testify that you come from a clan where everybody is just scum, and then you'd have your corroboration. I should have heard of that. I think that's the first time I've ever heard of that suggestion. The IJ found defects in the evidence, the affidavits, and the BIA upheld that, and I don't see why we're compelled to say that, no, those affidavits were sufficient to carry Mr. Aden's burden of proof. Can you address why the IJ's identification of defects in those affidavits was not reasonable? Because it goes back to the credibility founding. Mr. Hassan Aden didn't know what the IJ was thinking. If the IJ had made the credibility founding, and found Mr. Hassan Aden to be incredible, then... But the statute says it doesn't matter. The statute says even if the evidence is credible from the petitioner, the IJ is still within his rights to require corroborating evidence. That's the change in the law. And without the corroborating evidence, the IJ says Mr. Aden did not carry his burden of proof. I agree with that, but there are two cases that are relevant here, and I suggest both of them might please speak to us in court and tell us that if the affidavit is credible, then corroborating evidence is not a crime. But this is before the Real I.D. Act. We don't really have any posts for the Real I.D. Act. That was in 2008, and that means the Real I.D. Act was enacted before that. And which case are you referring to? Kelly Peckman. Kelly Peckman, 6-5-23-X-3-11-18. Both of the cases I've cited to you were after the Real I.D. Act. Yeah, but this was a pre-Real I.D. Act case. What the Real I.D. Act said was if the appeal happened after May 1, 2005, then the new statute applies. This case involved an appeal that was before May 1, 2005. So it was using the older law. So that is an appeal from the Seventh Circuit. And I know that the Seventh Circuit is not concluding, but I think it does provide some reason for this, because it's actually a very pressing matter for me. Because the Seventh Circuit requires a criminal conviction found in one way or another. And I think the rationale is perfectly applicable here. Because, I mean, there are really two reasons why there should be a criminal conviction found in this case. I mean, if you allow an immigration judge to require a criminal conviction, to require corroboration,  you'd be wasting a lot of time and money where the evidence is actually credible. I have to say, I did read the Rafael case, and I found it incomprehensible, but I'll take another look at it. Well, my meaning of the case was this. It requires a criminal conviction found to be through any corroboration, and that's the reason, too. At this point, I would like to stop and share the comments of the defendants. Thank you, counsel. May it please the Court. I'm Mark Walters, representing the Attorney General of the United States. The standard of review on corroboration has changed, as well as the law on corroboration. And the standard of review under 1252b-4 now requires the Court to uphold the demands for corroboration by the agency unless the evidence compels the conclusion that corroboration is unavailable. That's 8 U.S.C. 1252b-4. Well, the starting point for whether the evidence compels that seems to me to be, did the petitioner argue that? Because there's no reason for the agency to even discuss availability unless somebody puts that in issue. In this case, the petitioner doesn't say whether he looked for scholarly documents or other evidence of corroboration. He didn't challenge the I.J.'s statement that such sources likely exist when the I.J. first made that statement. He didn't argue that such sources do not exist after two months were given to him to find corroboration. Let me ask you this. Let's assume that the I.J. was correct, that there was evidence that was available for corroboration, and it didn't come in, that there were defects in the affidavits. We still, on appeal, there wasn't a specific adverse credibility finding. So we take Mr. Aiden's testimony as true. I believe that still remains. And then given his testimony, even in the absence of corroborating evidence, why wasn't it enough? He testified, well, I'm a member of the Billy Saar tribe, the McGordy sub-clan, whatever it was, and were persecuted by the Hawaii, the other clan. Why isn't that enough to carry his burden? Well, the I.J. said, I don't know what to believe. And there are decisions of this Court predating the Real ID Act that said that if the I.J. doesn't believe the petitioner or doesn't know what to believe, then it's okay to require corroboration. Now, the one case that my opponent cited, the Carrick-Petkin case, the Court is correct. That's a pre-Real ID Act case. And if you look at it just quickly, it might seem to reverse that don't know what to believe rulings in CODA and CEDAW, among others. But actually, in that case, the I.J. just said in a passing remark, I don't know what to believe. And elsewhere in the I.J.'s decision, she said, I find them credible. In this case, it wasn't a passing remark. Over and over again, the I.J. said, this is troubling. This case cries out for corroboration. I don't know what to believe. Under the Real ID Act law, I would say that the law that you presume credibility when an I.J. says that needs to be looked at again, that the Real ID Act really does undercut that dramatically. In this case, even if they've been found credible, corroboration could be required. That's under the statute and under the Seventh Circuit's reading. The Seventh Circuit presumed to look at Ninth Circuit law as part of that opinion, and its evaluation of Ninth Circuit law on the impact of the Real ID Act is one that we agree with and that we urge the court to accept as well, what the impact is on the old law. It also looked at the Second and Third Circuits and its own law. The Seventh Circuit was closely aligned, I think, with the Ninth Circuit on pre-Real ID Act law, and they said our prior case law, including, for example, the Goncharova case, which Petitioner relies on, is no longer good law. What about this Rapéh L case that they're citing? Actually, that's the one. That's the one I was talking – I think I shifted gears to talk about that. When I talked about the Seventh Circuit, that's the one that I meant. Because they do say, at least under the facts of that case, that you have to make an adverse credibility decision first. I really have trouble understanding that decision. I have a little trouble with it, too, Your Honor. I've come to an understanding, which I'm not sure the Seventh Circuit would or would not agree with, from looking at it. I think in that case, while they have – everything they said agrees with what we say in our brief about what the Real ID Act means, and what they also say throughout most of their opinion, I think what they decided in that case was that the IJ found the person incredible. The Board didn't address the credibility problem, and the IJ specifically said, I want corroboration or I expect corroboration because you're not credible. And the Seventh Circuit, looking just at that specific sequence of events, said, well, if the Board didn't deal with the credibility issue, how can the Board then base their expectation of credibility on the fact that – I think it's fact specific. Everything leading up to that seems to indicate that you don't need to make the credibility finding in the first case, so I think the Seventh Circuit could have said, it's immaterial, whether the IJ first said you're incredible or simply said, I'd like to see corroboration, but they didn't. I'm having trouble, and I think you explained the case very well, Mr. Walden, but if I understand you correctly, you're saying that our Ninth Circuit court law, which I understand to be that if the IJ makes a favorable credibility finding or does not make an adverse credibility finding, that evidence was sufficient to support a petition for asylum. You're saying under the Real ID Act, notwithstanding that, the IJ can demand corroboration. That's certainly what the statute reads. Isn't that, ineluctably, a conflict with our prior jurisprudence? I believe it is. I believe it is. Although I think your prior jurisprudence, if I may say so, is a little bit inconsistent in that you find references to IJs not knowing what to believe as justifying corroboration, and then you find references to a presumption of credibility unless the IJ specifically says it's not credible. Well, that's the methods by which we arrive at a non-adverse credibility finding. But let's say it's a clear credibility finding. I think this one was. The man is credible. No reason to think he's not credible. His testimony is somewhat hazy and problematic because he gives several names to the clan he belongs to. That may be explainable by some professor of Somali anthropology, but it may not have been explained by this 19-year-old lad. But what you're telling us really is that this case puts the issue about whether our jurisprudence regarding clearly credible findings are in conflict with the statute under Real ID saying notwithstanding that, IJ can still demand corroboration and find contrary to the credibility findings made if there is no such corroboration. It's a flat contradiction. I believe so. And if I could give my own opinion on why that's not irrational, A lot of people come into an immigration court and they're not lying, but they don't have a basis for what they're saying. In other words, I fear going back to my country because the government is going to stop me at the airport and shoot me dead on arrival. They may actually believe that. They may actually fear that. But there's no evidence that that government has ever done anything like that. I actually had a case like that years ago. There's no evidence that that's ever happened. It doesn't mean they're lying. It means that they're telling a story that they have no personal foundation for. And the fear is very real. But an IJ wants more, and what Congress has said is it's reasonable to expect more in many of these cases, especially where, as many courts have said, the only evidence getting into the record is coming from the petitioner in terms of what their actual story is. So let me ask you. If the IJ says, I want corroboration and I deem it to be reasonably available, and the petitioner doesn't come up with corroborating evidence or corroborating evidence that meets the IJ's standard, does that mean that the IJ, the BIA's determination not to grant asylum is just per se reasonable? We just have to defer to that, regardless of the testimony of the petitioner? Well, Your Honor, I don't know that I would go that far. It's all intertwined with the burden of proof. Burden of proof, corroboration, and credibility all are interrelated. And I think because the petitioner has the burden of proof, when the IJ doesn't know what to believe, the petitioner hasn't met the burden of proof. If there is testimony sufficient to carry the day without corroboration, and there hasn't been a finding that the alien is credible, you have to look at whether they said, I don't know what to believe without the corroboration. I think you have to give that some deference under the new law. Just out of curiosity, is there subpoena power in these proceedings? I was afraid you were going to ask me that, Your Honor. I used to know the answer to that question. I've litigated that issue, but it's been a while. I don't trust my recollection either of the law as it was, and I certainly don't trust my current knowledge on that issue. What I do remember is that the subpoena authority for an immigration court is not equal to the subpoena authority for a U.S. District Court. There were some significant differences, but I'm really not in a position to answer your question. I've never seen a record where a lawyer said, now, you're here against your will and under subpoena. Isn't that true? So I just don't know. I don't think there's an effort to use it in an overwhelming majority of cases so that the chance for it to come up as an issue is so rare. I was thinking if I had this case, I'd like to subpoena somebody from an enemy clan who would display hostility on the stand, but I don't know if you can. Well, Your Honor, if the court would like me to send a submission, I can find out, but I really apologize for not knowing that. We'll let you know if we need any more. One more question I had. I wasn't clear that there was any credibility finding one way or the other. I guess I was influenced by this language on 114 without determining that the respondent is otherwise credible, but merely assuming that he is. I am left to wonder about the respondent's clan membership. Was there a credibility finding? I believe after the evidence came in, the three, and I only call them affidavits in quotes, but those three statements, unsworn statements, I believe there was at that point a finding that he hasn't persuaded me that this is a credible claim. That's a different thing. As you say, a person can be truthful, but his claim may not be credible because he lacks foundation or is mistaken or any number of things. The board's on AR2. The board says the IJ's finding that the respondent failed to meet his burden of proof is supported by the record. We find no clear error. This is the third paragraph. I just didn't see anything. I think it's a burden. I think it's a burden of proof issue. As I said, we have viewed those as interrelated. Okay, so what they did is they never reached credibility. They just determined that more cooperation was necessary to bear the burden of proof and it wasn't there. Well, I haven't read the entire thing, but I think that's a burden. Yes. I think it was dealt with by the board as a failure of burden of proof. It's a fairly short decision. I read the whole thing with care. Yeah. That's why I'm asking about it. I didn't see it and I'm wondering if it's there. Yeah. I didn't see it in the board's decision. We did argue that you look to both decisions where the board issues a one-member short opinion. I could have missed it, so that's why I want to know if it's there. It sounds like you don't know. Well, I'm looking through the IJ's decision. Towards the end of it, I'm at AR 120. It's a clear decision on the burden of proof. I'm not sure, Your Honor. I will look. AR 120? Well, that's where I was looking. I didn't find anything, so I don't know that you should waste your time. Okay. Thank you, counsel.           I'm at AR 120. I'm at AR 120. I'm at AR 120. I'm at AR 120. I'm at AR 120. I'm at AR 120. I'm at AR 120. I'm at AR 120. I'm at AR 120.    I'm at AR 120. I'm at AR 120. Right. Question but no answer, is that right? Yes, he hasn't and that's why I think it was dealt with as a burden of proof issued by the board. Burden of proof. Thank you counselor. Our cases seem to say and correct me if I'm wrong, that unless there is an adverse credibility finding, we presume that there was a favorable credibility finding, is that incorrect? I don't think the court has said that in a case where they were applying the real idea. But yes, the court has said that in all cases. So one of the issues for the court is to look at that case law and decide whether the real idea, by saying that you can require corroboration even if they're found credible, legislatively overturns that line of cases. Thank you. Thank you, counsel. I think Petitioner's counsel deserves some time. Can you please report? Again, we want to reiterate that there was no credibility finding. So when Mr. Hasan Adnan went to testify in the immigration hearing, he assumed that his claim. Do we have any post real idea cases that carries forward our old law that says that unless there's an adverse credibility finding, we presume credible? As far as we know, there are not any that state that specific fact that the real idea act does say that when corroboration is not reasonable, that the IJ can ask for corroboration only when reasonable. In this instance, there's no centralized government in Somalia. He comes from a very small clan. Corroboration evidence beyond what he got is unreasonable for him to obtain. Why? There's no centralized government right now. So what? There are a lot of Somalis in America. There are a lot of Somalis in America, but again, he comes from a very small clan. That's very hard to find evidence about. The evidence that he got are from three other Somalis who were also in the United States who claim that they did, that they did know that he came from southern Somalia and specific region that he came from. But the three of them said they didn't know Mr. Aden. Well, that's true. But again, when you come from a clan of 200 people and there are millions of people in your country, it might be difficult. And you're in a third country. It might be difficult to find somebody who you don't know. There's something about his name which identifies him with this particularly small clan which allows the defiance to say we know he comes from that branch. That doesn't appear in the affidavit. They say we don't know him, but we know he came from this tribe. Not very convincing, is it? Well, you're right. There may be something about this name that makes point. That would be speculation. But it certainly wasn't found by the IJ or wasn't even presented in the briefs. Right. Well, there were a couple of times, actually several times, there were nine times, when there were words that were indiscernible to the record. And some of those instances were words that went to a clan identity or when he was spelling his name that just were never translated correctly, never interpreted, and the IJ just went over. That issue was not developed in the briefs in any way. Well, that was developed in the faulty translation, as far as faulty translation goes. There were a lot of matters that went to the claim as far as different clan affiliation, giving documents about identity, and those were happening because of lack of translation, of correct translation. So there's no evidence, no positive evidence that there's any way you can tell from his name where he's from in Somalia or what clan he's in? Not as far. There may be evidence about his name. But, again, there was an instance when he was translating his name where there were things that were mistranslated in the records. Thank you, Counsel. Thank you. Hassan Aden v. Mukasey is submitted for your adjournment of the day. All rise. This court is now adjourned.
judges: Bea, Ikuta, Friedman